UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT JAMES SILER,

        Plaintiff,

Case No. 1:10-cv-97

Hon. Robert J. Jonker

v.

PATRICIA CARUSO, *et al.*,

        Defendants.

                                /

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1] This matter is now before the court on motions for summary judgment filed by defendants Patricia Caruso (docket no. 14) and Michael Whalen (docket no. 32). The motions are unopposed.

    **I.**    **Background**

Plaintiff's complaint alleged an Eighth Amendment violation arising from the alleged lack of medical care provided during his incarceration at the Muskegon Correctional Facility (MCF). Plaintiff has named five defendants in this action: Michigan Department of Corrections (MDOC) Director Patricia Caruso; Correctional Medical Services, Inc. (CMS); Prison Health Services (PHS); Physician Assistant (P.A.) Daniel Spitters; and Health Unit Manager (HUM) Michael Whalen. Compl. at p. 2. Plaintiff has sued all defendants in their official and individual capacities. *Id.*

Plaintiff alleged that on or about October 9, 2007, while exercising at the prison yard at MCF, he "was unknowingly using an unmarked and broken piece of prison yard exercise

---

[1] The docket sheet reflects that plaintiff has been paroled, with a current mailing address at a post office box in Grand Haven, Michigan. *See* docket nos. 9 and 10.

equipment." *Id.* at p. 3. As a result, plaintiff "suffered a painful, deforming, crippling and life altering spinal injury." *Id.* Plaintiff alleged that defendants conspired "through coordination of Policies and personal [judgment] to deny Mr. Siler necessary medical care, treatments, tests, access to qualified medical staff and mostly [non-existent] and [i]nadequate pain medications, even after they were prescribed by MDOC staff." *Id.* Plaintiff also alleged that defendants conspired to prevent him from communicating with and discovering the names of individuals responsible for denying him the necessary tests and medical care requested "by qualified physicians" that evaluated him. *Id.* Plaintiff alleged that through this conduct, defendants were deliberately indifferent to his serious medical needs. *Id.* Plaintiff seeks compensatory and punitive damages in the amount of one hundred million dollars ($100,000,000.00), "reimbursement of all medical costs" while he was at the MDOC, lost wages, court costs and attorney fees. *Id.* at p. 4.

## II.     Legal standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

2

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Defendants' motions for summary judgment are unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### III. Discussion

#### A. Plaintiff's Eighth Amendment claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

3

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

4

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### B. MDOC Director Caruso

Plaintiff has not alleged that Director Caruso provided him with health care. Rather, plaintiff has alleged that she was responsible for the acts of those individuals at the MDOC who denied him health care and was part of a conspiracy to deny him health care. As an initial matter, plaintiff cannot state an Eighth Amendment claim against MDOC Director Caruso for failing to supervise the health care staff at MCF. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

In addition, there is no evidence that MDOC Director Caruso engaged in a conspiracy to deny plaintiff health care. In her uncontested affidavit, Director Caruso states that she is the chief administrative officer responsible for the overall operation of the MDOC, that she was not aware of plaintiff's allegations until she was served with a copy of his complaint, and that she had no personal involvement in the allegations which form the basis of the complaint. *See* Caruso Aff.

5

(docket no. 15-2). Plaintiff has failed to make any showing that Director Caruso was involved in his medical treatment or a conspiracy to deny him treatment. Accordingly, Director Caruso is entitled to summary judgment as to all of plaintiff's claims.

## C. HUM Michael Whalen

Plaintiff has also alleged that HUM Whalen failed to provide him with adequate medical care and engaged in the conspiracy against him at MCF. HUM Whalen has set forth the following facts in his uncontested affidavit. As the HUM at MCF, defendant Whalen was responsible for the management of health services within the facility's Ambulatory Health Care Unit, coordinating all clinical activities, dental, medical, psychological services, mental health and all ancillary and support services. Whalen Aff. at ¶¶ 1-2 (docket no. 33-1). He also provided direct clinical care when appropriate. *Id.* at ¶ 2.

Plaintiff has extensive medical records at MCF, consisting of approximately 200 entries and "nearly 1000 separate templates" in the electronic medical record. *Id.* at ¶ 5. After reviewing the records, HUM Whalen made the following observations:

> 6. No where in his medical record does it indicate that Siler was injured by faulty exercise equipment; that he suffered a crippling neurological disorder or had life threatening injuries. There is information in his medical file, however, that Siler was using athletic track and lifting weights when making complaints to health care.
>
> 7. Siler was seen by a medical doctor on 4 occasions and a physician's assistant 1 time and requested specialty care. According to the medical providers, at no time did Siler's medical condition require a higher level of care.
>
> 8. Siler's medical chart was also reviewed approximately 20 times by physicians, 4 times by physician's assistants, 120 times by nursing staff, 2 times by the dentist, and 25 times by myself. In addition, Siler also sent 77 Health Care Request Forms or kites while at MCF.
>
> 9. Siler was known to be non-compliant with all aspects of his health care which includes[:] refusal to be evaluated by certain clinical providers and specialists; not

6

showing for medication; taking too many medications against medical advice; and, not showing for scheduled case management appointments.

*Id.* at ¶¶ 6-9. In addition, HUM Whalen stated that he had no specific recollection of treating plaintiff. *Id.* at ¶ 10.

Based on this record, plaintiff's only claim against HUM Whalen is in his supervisory capacity as the HUM. As previously discussed, plaintiff cannot base a § 1983 action cannot be based on a theory of respondeat superior. *See Monell*, 436 U.S. at 691; *Taylor*, 69 F.3d at 80-81. In addition, there is no evidence that HUM Whalen engaged in a conspiracy to deny plaintiff medical treatment. On the contrary, the numerous entries in plaintiff's medical file indicate that plaintiff was provided substantial medical care at MCF, having been seen by doctors and physician's assistant, and having his medical chart reviewed on over 150 occasions. Furthermore, HUM Whalen has pointed out the absence of any record: that plaintiff was injured by faulty exercise equipment; that he suffered a crippling neurological disorder; or that he had life threatening injuries. Based upon the above, defendant Whalen is entitled to summary judgment as to all of plaintiff's claims.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that the motions for summary judgment filed by MDOC Director Caruso (docket no. 14) and HUM Whalen (docket no. 32) be **GRANTED**.

Dated: January 7, 2011                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).